**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BRADFORD MAYNE, | : | |
| Plaintiff, | : | Civil Action No. 08-5785 (SRC) |
| v. | : | **O P I N I O N** |
| STATE PAROLE OFFICER DARREN CLARKE, | : | |
| Defendant. | : | |

**APPEARANCES:**

Bradford Mayne, <u>Pro Se</u>
117 Wagon Wheel Road
Sparta, NJ 07871

**CHESLER**, District Judge

    Plaintiff, Bradford Mayne, was a prisoner confined at the Albert C. Wagner Youth Correctional Facility in Bordentown, New Jersey, at the time he filed this civil complaint which alleges violations of his constitutional rights, pursuant to 42 U.S.C. § 1983.  Plaintiff has not paid the filing fee, and seeks permission to proceed <u>in forma pauperis</u>.  Based on Plaintiff's affidavit of indigence, this Court will grant his request.

    At this time, the Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2).

## BACKGROUND

According to the complaint, on February 5, 2007, Plaintiff was paroled from the New Jersey Department of Corrections.  On December 4, 2007, he was placed into the Electronic Monitoring Program run by New Jersey State Parole.

On December 7, 2007, Plaintiff first met the defendant, Darren Clarke, who was assigned to be his parole officer.  On that day, Plaintiff informed Defendant that he was mentally ill, suffering from bipolar disorder, alcoholism, and addiction, and that he was under the care of a doctor.  Plaintiff also informed the officer that he wanted to initiate a state court medical malpractice claim.  Plaintiff asked for permission to attend Alcoholics Anonymous or Narcotics Anonymous meetings.  Defendant refused his request and said that he would speak to his supervisor.

On December 18, 2007, Defendant visited Plaintiff at his home.  Plaintiff told Defendant that he had used drugs, and that he wanted permission to attend AA or NA meetings.  Defendant told Plaintiff that he had not yet heard back from his supervisor. Defendant than insisted that Plaintiff find a job, although Plaintiff informed Defendant that he collected Social Security Disability because of his mental illness.  Defendant responded that he "didn't want to hear that," and that "all of [his] parolees work."

2

On January 3, 2008, Defendant visited Plaintiff's home again, insisting that Plaintiff get a job.  Plaintiff asked Defendant if he could attend religious services with his mother and grandmother, and Defendant "avoided the question," telling Plaintiff again that he should get a job.  Plaintiff again informed Defendant of his mental illness, his SSD payments, and asked to be allowed to attend AA or NA.  Defendant told Plaintiff he was suffering from "cabin fever" and should get a job.

On January 30, 2008, Plaintiff attempted suicide.  He remained an inpatient until February 3, 2008.  On February 5, 2008, Plaintiff tested positive for opiates.  Defendant told Plaintiff he was not to use the medication "Suboxone" for opiate detoxification because it could cause a false positive on a drug test.  Plaintiff had been on Suboxone since December of 2007, and it was prescribed by his doctor.  Plaintiff again asked to attend AA and NA meetings, and defendant repeated that he had not heard from his supervisors.  Plaintiff asked for permission to call the supervisors himself, and Defendant refused.

On February 13, 2008, Plaintiff had gone for treatment at a hospital.  There was a snowstorm that day, and the bus dropped Plaintiff off twelve miles from his house.  Plaintiff walked home and received a call from Defendant, who yelled at him that he was looking for him.  Plaintiff told him he could have just called Plaintiff's cell phone, and Defendant stated that he was going to

talk to his supervisors about the incident. Plaintiff asked Defendant to also ask the supervisors about attending AA meetings, going to church services, and using a legal library to pursue his medical malpractice claim. Defendant said he would not do so.

Plaintiff argues that Defendant was deliberately indifferent to his medical illnesses, that he should have been permitted to go to AA/NA meetings, church, and the law library, and that Defendants actions caused him to have a mental breakdown. Plaintiff asks for monetary relief for violations of his constitutional rights.

**DISCUSSION**

**A.    Standard for Sua Sponte Dismissal**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are

frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of

allegations qualify as sufficient to pass muster under the Rule 8

pleading standard.  See Phillips v. County of Allegheny, 515 F.3d

224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in

relevant part:

> [T]he pleading standard can be summed up thus:
> "stating ... a claim requires a complaint with enough
> factual matter (taken as true) to suggest" the required
> element.  This "does not impose a probability
> requirement at the pleading stage[ ]" but . . . "calls
> for enough facts to raise a reasonable expectation that
> discovery will reveal evidence of" the necessary
> element.

Phillips, 515 F.3d at 234 (internal citations omitted).

## B.    Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  See West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C.    **Access to Courts Claim**

Plaintiff claims that he was denied access to courts in violation of the First Amendment because he was "unable to research the [criminal] charges pending against him," and because he was "unable to bring a tort claim for medical malpractice against a medical doctor in a timely manner." (Complt., ¶¶ 24-26).

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access

to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

> [There is no] abstract, freestanding right to a law
> library or legal assistance, [and] an inmate cannot
> establish relevant actual injury simply by establishing
> that his prison's law library or legal assistance
> program is subpar in some theoretical sense.  ...
> [T]he inmate therefore must go one step further an
> demonstrate that the alleged shortcomings in the
> library or legal assistance program hindered his
> efforts to pursue a [non-frivolous] legal claim.  He
> might show, for example, that a complaint he prepared
> was dismissed for failure to satisfy some technical
> requirement which, because of deficiencies in the
> prison's legal assistance facilities, he could not have
> known.  Or that he had suffered arguably actionable
> harm that he wished to bring before the courts, but was

8

so stymied by inadequacies of the law library that he
was unable to file even a complaint.

Lewis, 518 U.S. at 351.

In this case, Plaintiff fails to allege facts indicating
"actual injury."  Accordingly, Plaintiff fails to state a claim
for violation of his right of access to the courts, and fails to
demonstrate any constitutional violation by defendant warranting
relief.

## D.   **Medical Care Claims**

Plaintiff claims Defendant's refusal to allow him to attend
AA/NA meetings constituted deliberate indifference to his medical
needs, causing him to relapse and remain addicted, and denying
him help he desperately needed.  Also, Plaintiff argues that
Defendant was deliberately indifferent to his medical needs when
he interfered with Plaintiff's prescription for Suboxone.
(Complt, ¶¶ 27-31).

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-
04 (1976).  In order to set forth a cognizable claim for a
violation of his right to adequate medical care, an inmate must
allege:  (1) a serious medical need; and (2) behavior on the part
of prison officials that constitutes deliberate indifference to
that need.  See id. at 106.

In the case at issue, Plaintiff alleges facts indicating the seriousness of his condition and the deliberate indifference of Defendant in delaying his treatment and interfering with his medication.  Thus, these medical care claims will proceed past <u>sua</u> <u>sponte</u> screening and Defendant will be ordered to answer the claims.

**E.     Free Exercise Claim**

Plaintiff asserts that he was denied his First Amendment right to exercise his religion, Roman Catholic, when Defendant refused to allow him to attend church services, going to confession, and making communion.  (Complt., ¶¶ 32-37).

To establish a violation of his right to freely exercise his religion, an inmate must satisfy the "reasonableness test" set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987), and <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987).  The standards delineated in <u>Turner</u> and <u>O'Lone</u> indicate that when a prison regulation encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest.  <u>See</u> <u>Turner</u>, 482 U.S. at 89; <u>O'Lone</u>, 482 U.S. at 349.

In this case, Plaintiff has alleged facts indicating that his right to practice his religion has been interfered with; therefore, this Court will allow this claim to proceed at this time.

**CONCLUSION**

For the reasons set forth above, Plaintiff's access to courts claim will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2).  All other claims will be permitted to proceed.  An appropriate order accompanies this opinion.

STANLEY R. CHESLER
United States District Judge

Dated: